IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK JOSEPH RICHEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*, )<br>)<br>Defendant. ) | Civil Action No. 22-129-E |

**O R D E R**

AND NOW, this 8th day of September, 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on October 14, 2022,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on September 14, 2022,

IT IS HEREBY ORDERED that said Motion is GRANTED. The matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

Plaintiff Derek Joseph Richey protectively filed a claim for Supplemental Security Income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.*, effective November 21, 2019, claiming that he became disabled on June 23, 2005 due to autism spectrum disorder, learning difficulties, attention deficit hyperactivity disorder ("ADHD"), and anxiety. (R. 17, 194-203). After being denied initially on February 19, 2020 and upon

reconsideration on August 28, 2020, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). (R. 80, 93, 103-110). After a hearing held on January 21, 2021, ALJ John Kooser denied Plaintiff's request for benefits in an unfavorable decision dated February 10, 2021. (R. 12-70). On February 23, 2022, the Appeals Council declined to review the ALJ's decision. (R. 1-6). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment. (Doc. Nos. 13, 15).

## II.     Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'") (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). If the district court finds the Commissioner's findings of fact are supported by substantial evidence then it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour*, 806 F.2d at 1190-91.

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* To facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 416.945(a). In crafting the RFC, the ALJ must consider all the evidence in the record. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks

the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at § 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 416.923.

### III.     The ALJ's Decision

In his February 10, 2021 decision, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the application date of November 21, 2019. (R. 17). The ALJ proceeded to the second requirement of the process and found that Plaintiff had several severe impairments: ADHD, autism spectrum disorder, borderline intellectual functioning, and anxiety disorder. (*Id.*). The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three. (R. 18).

At Step Four of the process, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels provided that the job encompassed the following non-exertional limitations:

- involve no more than simple, routine, repetitive tasks;
- a low stress work environment;
- involve no high-volume productivity;
- very infrequent unexpected changes;
- no contact with the public;
- no more than occasional contact with co-workers (and not necessary to interact with co-workers to carry out job duties);
- no more than occasional interaction with supervisors;
- no more than moderate noise levels; and

- no occupational hazards such as unprotected heights, dangerous machinery, ropes, ladders, scaffolds.

(R. 19). The ALJ further found that Plaintiff had no past relevant work. (R. 23). He proceeded to determine, at Step Five, whether there were jobs in the national economy that Plaintiff could perform. (R. 23-24). In determining this, the ALJ asked the Vocational Expert (the "VE") at the hearing the following hypothetical:

> [T]he individual can work at any exertional level but is limited non-exertionally to jobs involving no more than simple, routine, repetitive tasks that would be performed in a low stress work environment, which I'll define as work involving no high volume productivity requirements and very infrequent unexpected changes. We'll say no contact with the public, no more than occasional contact with coworkers and any contact with coworkers is superficial in nature, meaning it's not necessary to interact with coworkers to carry out job duties. No more than occasional interaction with supervisors, we'll say no more than moderate noise levels and we'll say no occupational hazards such as unprotected heights, dangerous machinery, ropes, ladders or scaffolds. Would there be any jobs that this hypothetical individual could perform?

(R. 66). In response, the VE testified that Plaintiff could perform a significant number of jobs in the national economy, including the representative occupations of automotive detailer, agricultural packer, and housekeeper/cleaner. (R. 24, 66). The VE further testified that in a competitive environment an individual would be expected to function with a certain level of independence after a certain amount of training. (R. 67). Additionally, the VE testified that the maximum amount of off-task time would be 15 to 20% when the individual had trouble staying on task, had difficulty focusing on job duties, or for whatever reason would be non-productive. (R. 67). Considering the testimony of the VE, the ALJ concluded that there are jobs in the national economy that Plaintiff can perform. (R. 24). Ultimately, the ALJ found that Plaintiff was not disabled. (*Id.*).

**IV.     Legal Analysis**

Plaintiff raises several arguments as to why the ALJ's finding that he was not disabled was not supported by substantial evidence. (Doc. 14). The Court finds that the ALJ inadequately explained the rationale behind the non-exertional limitations incorporated into Plaintiff's RFC. (R. 19-23). Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of this issue.

Plaintiff asserts the ALJ impermissibly failed to limit Plaintiff's RFC to one-to-two step tasks despite the opinion of state agency psychological consultant Douglas Schiller, Ph.D., who found that Plaintiff "would be expected to understand and remember simple, one and two-step instructions." (Doc. No. 14 at 1, 10). Plaintiff contends that the ALJ's hypothetical posed to the VE raised a conflict as it addressed only jobs involving "simple, routine, repetitive tasks" instead of jobs encompassing one-to-two step tasks. (*Id.* at 10, 66). Based on this incomplete hypothetical, Plaintiff argues that the Court cannot rely on jobs the VE and ALJ found that he was able to perform because these jobs were at reasoning level 2, which requires the ability to perform more than one-to-two step tasks. (*Id.* at 12).

Naturally, Defendant disagrees. Defendant counters that the ALJ permissibly considered Dr. Schiller's findings and exercised his discretion to find them persuasive and yet not adopt them wholesale. (Doc. No. 16 at 1, 7). Defendant also contends that even if the ALJ erred with regard to Dr. Schiller's findings, any such error was harmless because one of the jobs the VE determined Plaintiff could perform had a reasoning level of 1, the job of cleaner, and this level of reasoning requires only the ability to carry out one-to-two step tasks. (*Id.* at 2, 8). Although there is some logic to Defendant's position, the Court disagrees.

In formulating a claimant's RFC, the ALJ must consider all relevant evidence and include "a clear and satisfactory explication of the basis on which [the RFC] rests.'" *Fargnoli*, 247 F.3d at 41 (quoting *Cotter*, 642 F.2d at 704). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" *Id.* (quoting *Cotter*, 642 F.2d at 705). *See also* S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Here, Defendant's position notwithstanding, the ALJ failed to provide a clear and satisfactory explanation for each non-exertional limitation in the RFC.

While the ALJ's crafted RFC was detailed, his decision lacks adequate explanation as to how he came to his specific determinations as to Plaintiff's non-exertional limitations. In essence, the ALJ explained his RFC by summarizing record evidence without explaining how his RFC incorporated each of the Plaintiff's severe impairments. (R. 17, 19-23). In explaining the RFC, the ALJ wrote only:

> The claimant has well-documented autism spectrum disorder and other diagnosed conditions that warrant some significant work-related limitations, although the overall record does not show that he is precluded from work within the parameters of the above residual functional capacity assessment . . . Consistent with the medical opinions, records from the claimant's evaluations in recent years indicate limitations related to autism spectrum disorder, ADHD, anxiety, and borderline intellectual functioning . . . the undersigned finds that the residual functional capacity fully accounts for all of the claimant's reasonably demonstrated limitations.

(R. 20, 23). Without further necessary analysis, the ALJ did not fully explain how the specific elements of the RFC were each warranted and correlated to the Plaintiff's impairments.

8

Specifically of note, the ALJ's summary of record evidence included multiple references to Plaintiff's borderline intellectual functioning but lacked explanation as to how this impairment factored into the RFC. Indeed, the ALJ explained that a consultative examination report from September 2018 by T. David Newman, Ph.D., cited diagnoses of autism spectrum disorder (mild) and a neurodevelopmental disorder as evidenced by a Wechsler Adult intelligence Scale, Fourth Edition assessment showing a full scale IQ of 74 (borderline range). (R. 21 (citing Exhibit 2F)). The ALJ also noted Plaintiff's borderline IQ results from a December 2019 Wechsler Adult Intelligence Scale, Third Edition test. (R. 21 (citing Exs. 4E, 7E/3, 5F)). The ALJ further referenced Dr. Schiller's review of Plaintiff's diagnosis of borderline intellectual functioning. (R. 23 (citing Ex. 3A)). The ALJ found persuasive the "consistent" opinions of Drs. John Miller, Ph.D., Kelly Roberts, Psy.D., and Schiller, which all included moderate limitations in the claimant's ability to work due to his mental impairments (R. 23). Drs. Roberts and Schiller both noted that Plaintiff has Borderline Intellectual Functioning and noted this impairment as "severe." (R. 74, 88). Dr. Miller noted during his August 2020 examination that Plaintiff was "[m]ildly impaired due to limited intellectual functioning." (R. 437). The ALJ further noted that these opinions were in line with "records from the claimant's evaluations in recent years indicat[ing] limitations related to autism spectrum disorder, ADHD, anxiety, and borderline intellectual functioning . . ." (R. 23).

Despite referencing this fairly extensive evidence documenting Plaintiff's borderline intellectual functioning, the ALJ failed to explain how it was considered when crafting the Plaintiff's RFC. The ALJ's formulated RFC provided that Plaintiff could perform no more than simple, routine, repetitive tasks, but it is not clear if this limitation incorporated Plaintiff's borderline intellectual functioning, if another limitation in the RFC incorporated this impairment,

or if it was incorporated at all into the RFC. In light of this ambiguity, and the ALJ finding persuasive the opinions Drs. Roberts and Schiller, who both noted that Plaintiff's borderline intellectual functioning was "severe," remand is necessary for further explanation as to how the RFC incorporates Plaintiff's borderline intellectual functioning impairment.

The Court notes that the ALJ need not necessarily incorporate the exact "one-to-two step tasks" language into the RFC as Plaintiff urges. "The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). *See also* 20 C.F.R. §§ 416.927(d)(2), 416.946(c). Indeed, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart,* 174 Fed. Appx. 6, 11 (3d Cir. 2006). *See also Chandler*, 667 F.3d at 362 (holding that each fact incorporated into the RFC need not have been found by a medical expert); *Baron v. Saul*, No. 20-141-E, 2021 WL 4480669, at *1 n.2 (W.D. Pa. Sept. 30, 2021) ("although the ALJ considered Dr. Leonard's opinion and found it to be persuasive, she did not adopt it wholesale. Rather, she crafted an RFC that included limitations to reflect Plaintiff's documented mental health conditions, just not to the extent that Dr. Aslo had opined . . . This is precisely what an ALJ is supposed to do.") (citations omitted). As the Third Circuit Court of Appeals explained in *Titterington*, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." 174 Fed. Appx. at 11. In fact, an ALJ is permitted to make an RFC assessment even if no doctor has specifically made the same findings. *See Hayes v. Astrue*, Civ. No. 07-710, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007). It was not necessarily error, then, for the ALJ to use the "simple, routine, repetitive tasks" language in the Plaintiff's RFC.

However, it was error for the ALJ to incorporate the "simple, routine, repetitive tasks" language into Plaintiff's RFC without explanation as to how this limitation, or any other non-exertional limitation, incorporated the Plaintiff's severe impairments. In *Burns v. Barnhart*, the Third Circuit held that language encompassing "simple, routine, repetitive work" in a claimant's RFC "is not sufficiently descriptive of the previously noted deficiencies [including borderline intellectual functioning]." 312 F.3d 113, 123 (3d Cir. 2002). The ALJ clearly noted borderline intellectual functioning as one of the Plaintiff's severe impairments and this diagnosis was not in dispute. (R. 17-23). Despite this, the ALJ did not explain how this language, or any other language, sufficiently described Plaintiff's borderline intellectual functioning.[1] Substantial evidence must support an ALJ's findings as to the claimant's RFC, and the ALJ must provide an adequate explanation as to how he formulated the RFC. *See Burnett*, 220 F.3d at 121-22; *Fargnoli*, 247 F.3d at 41. Here, the Court finds the explanation provided to be insufficient to determine whether substantial evidence supports the RFC's non-exertional limitations. While the ALJ was not required to adopt the opinion of any particular doctor, or to rely expressly on some other opinion, he did have to explain how the evidence supported his RFC findings. The Court is unable, simply by reviewing the ALJ's discussion of the evidence, to determine how that evidence translated into the ALJ's specific RFC findings, especially as they relate to Plaintiff's borderline intellectual functioning.

---

[1] It is not sufficient that the job of cleaner, identified by the VE as a job comporting with the RFC, requires a General Educational Development ("GED") reasoning level of one, which demands only the ability to carry out one or two step instructions. (*See* Doc. No. 16 at 8-9); DOT # 323.687-014, 1991 WL 672783. As discussed, because the ALJ has not explained how he accounted for Plaintiff's borderline intellectual functioning impairment, the Court cannot assume what additional limitations may have been incorporated into the RFC to account for this impairment. Such limitations may or may not include limitations other than a restriction to one or two step instructions. Therefore, the Court cannot determine that Plaintiff would be able to perform the cleaner job had this impairment been considered and accounted for in the ALJ's RFC simply by including the limitation to one or two step tasks.

The Court is cognizant that an ALJ's decision need not be so comprehensive as to account with meticulous specificity for each finding contained therein. Likewise, the Court does not fault the ALJ for failing to discuss every piece of evidence in the record. *See Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted). However, the Court is unable to review the ALJ's findings where the ALJ failed to "build an accurate and logical bridge between the evidence and the result." *Id.* Here, the ALJ essentially asks the Court to assume that certain language in the RFC incorporates Plaintiff's borderline intellectual functioning despite any explanation to that effect. However, the Court cannot make this assumption, as it is not the role of the Court to look at the evidence and determine whether it would lead to the conclusions that the ALJ reached. *See Fargnoli*, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corporation,* 318 U.S. 80, 87 (1943)). Therefore, the Court will remand the matter so that the ALJ can more clearly explain how he crafted his RFC.

V.   **Conclusion**

In sum, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's RFC are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:        Counsel of record